IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TIMOTHY AARON LIVELEY                                                                PLAINTIFF

v.                 Civil No. 3:21-cv-03022-TLB-MEF

SHERIFF DARREN REED, Ozark
County Sheriff's Department; and
DEPUTY JUSTIN BROWN                                                                 DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a *pro se* civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff, Timothy A. Liveley ("Liveley"), contends his constitutional rights were violated when he was arrested on November 17, 2020, by Deputy Justin Brown. The case is before the Court on the Defendants' Motion for Summary Judgment (ECF No. 41) and Liveley's response (ECF No. 51). Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making this Report and Recommendation.

### I.     BACKGROUND

Sheriff Reed is the duly elected sheriff of Ozark County, Missouri. Deputy Brown is employed by the Ozark County Sheriff's Department.

On September 17, 2020, a Caterpillar 910 Loader was stolen from property in Mammoth, Missouri. (ECF No. 41-1 at 2). The owner believed Liveley had something to do with the theft. *Id.* On October 27, 2020, Cody Kendall ("Kendall") reported his residence, located at 1636 State Highway J, in Gainesville, Missouri had been burglarized. *Id.* at 2 & 6. Kendall reported that several items, including a Sentry Safe, were stolen. *Id.* Kendall reported that Jamey Roof

1

("Roof") was involved and had been "running around" with Liveley. *Id.* at 6. On November 3, 2020, a third victim reported that an older model Ford Crown Victoria was stolen from his property located at 1622 State Highway J. *Id.*

On November 4, 2020, Deputy Brown interviewed Roof. (ECF No. 41-1 at 6). Roof was incarcerated on unrelated charges in the Baxter County Detention Center. *Id.* Roof denied any involvement but stated that when he was picked up by Liveley he noticed a safe in the back of Liveley's red Dodge pickup. *Id.*

On November 17, 2020, Deputy Brown was contacted by one of the victim's, Jessica Strain ("Strain"), who advised him that Liveley was camping down by the creek on County Road 527. (ECF No. 41-1 at 4). When asked where on the creek Liveley was camping, Strain stated it was just before the Arkansas state line. *Id.* Deputy Brown drove down Ozark County Road 527 to where the creek crossed over the road but could not locate anyone camping. *Id.* While looking, Deputy Brown heard a truck start up. *Id.* Deputy Brown drove toward the sound and found a male working on a red Dodge truck which matched the truck description given in the Strain case. *Id.* The location of the arrest is listed as the Possum Walk Road area, Gainesville, Missouri. *Id.* at 7.

When Deputy Brown learned the male was Liveley, Deputy Brown advised Lively that he was under arrest for outstanding warrants out of Howell County and Baxter County.[1] (ECF No. 41-1 at 4). Liveley was also advised he was under arrest for three theft cases out of Ozark County. *Id.* Liveley consented to Deputy Brown searching his vehicle. *Id.* Marijuana and a glass methamphetamine smoking pipe were found in a cigarette pack. *Id.* A baggie containing

---

[1] Liveley maintains he only had one outstanding felony warrant out of Arkansas at this time. (ECF No. 52). The number of outstanding warrants, however, is not a material fact.

2

crystalline substance was located during a search of Liveley's person. *Id*. The substance field tested positive for methamphetamine. *Id*.

Deputy Brown advised Liveley of his Miranda rights. (ECF No. 41-1 at 4). Liveley indicated he would talk to Deputy Brown. *Id*. Liveley confessed to being involved in the theft of the Caterpillar loader, the burglary of the residence, and the theft of the Crown Victoria. *Id*. at 4-5.

Liveley maintains that Deputy Brown was already in Arkansas when he arrived at the area where the creek crossed the road. (ECF No. 51). Liveley asserts Deputy Brown came further into Arkansas on Baxter County Road 16 before arriving to the place of the arrest. *Id*. Liveley contends that Deputy Brown was without authority or jurisdiction to make an arrest in Arkansas. *Id*.

## II. APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Com. V. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient

evidence to support a jury verdict in their favor." *Nat. Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Defendants have now moved for summary judgment arguing that it is clear from the facts that Deputy Brown had reasonable cause to stop Liveley and to arrest him and there was nothing improper in his actions. Deputy Brown asserts that his encounter with Liveley occurred in Ozark County, Missouri, where he is a duly authorized law enforcement officer. Deputy Brown also contends he is entitled to qualified immunity. With respect to Sheriff Reed, Defendants argue that he had no personal involvement in the investigation, or arrest, of Liveley and cannot be found liable under § 1983.

Deputy Brown's assertion that the arrest occurred in Missouri where the creek crossed the road is not supported by reference to any maps, GPS coordinates, or other verifiable data on the location of the arrest. Similarly, Liveley has not submitted any maps, GPS coordinates, or other verifiable data on the location of the arrest.[2]

The undersigned may take judicial notice of historical map information located in Google

---

[2] Liveley has requested the issuance of subpoenas for three witnesses who he indicates have knowledge about the location of the arrest. For the reasons set forth in this Report and Recommendation, the Court finds it unnecessary to subpoena these witnesses. The requests will be denied.

Maps. *See e.g., United States v. Nettles,* No. 4:18-cr-1007, 2021 WL 3131658, n. 9 (E.D. Mo. June 7, 2021) (multiple cases cited therein). Deputy Brown's incident report states he went "to the area where the creek crossed over the road." (ECF No. 41-1 at 4). Google Maps indicates Possum Walk Creek does not cross the road until it passes into Arkansas and becomes Baxter County Road 16.[3] For purposes of this Motion, the Court will therefore assume that the arrest occurred in Arkansas just across the Missouri/Arkansas state line.

Neither Missouri nor Arkansas recognizes the authority of a law enforcement officer to arrest in another state unless the officer was in "fresh pursuit." Ark. Code Ann. § 16-81-404; Mo. Ann. Stat. § 544.155. Here, it is clear Deputy Brown was not in fresh pursuit, but instead was attempting to locate Liveley. Arkansas law next provides that a "certified law enforcement officer who is outside his or her jurisdiction may arrest without a warrant a person who commits an offense within the officer's presence or view if the offense is a felony or a misdemeanor." Ark. Code Ann. § 16-18-106(c)(1). This statutory provision has no application to the facts of this case. Finally, Arkansas law authorizes a private party[4] to "make an arrest where he or she has reasonable grounds for believing that the person arrested has committed a felony." Ark. Code Ann. § 16-81-106(d). This provision of the law appears to provide the requisite state authority for Deputy Brown to have made the arrest in Arkansas. He clearly had reasonable grounds for believing Liveley had committed a felony. Aside from the fact that Deputy Brown was investigating Liveley for various felony violations, Liveley admits there was one felony warrant out for his

---

[3] https://www.google.com/maps/place/Co+Rd+527,+Bridges+Township,+MO+65655/@36.5151249,-92.4321077,13.21z/data=!4m5!3m4!1s0x87d1d435b37a95a7:0x6f41a55c8fe1ccaf!8m2!3d36.5164544!4d-92.4141298 (last accessed December 1, 2021).
[4] The statute does not define the term private party. However, the Arkansas Supreme Court has recognized that "[a]n officer who seeks to make an arrest outside his territory, without a warrant or statutory authority to do so, must be treated as a private citizen." *Perry v. State*, 794 S.W.2d 141, 143 (Ark. 1990).

arrest. Deputy Brown was aware of the existence of the warrant.

Reference to state statutory law alone, however, does not determine the constitutionality of an arrest. The Supreme Court has specifically rejected the idea that the constitutionality of an arrest be determined by reference to state statutory enactments. *Virginia v. Moore*, 553 U.S. 164, 176 (2008). "[S]tate restrictions do not alter the Fourth Amendment's protections." *Id.* Further, "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.'" *Frisbie v. Collins*, 342 U.S. 519, 522 (1952).

The constitutionality of the arrest is based on the totality of the circumstances and the reasonableness of the arrest. To be reasonable under the Fourth Amendment, the arrest must be based on probable cause. *Moore*, 553 U.S. at 173 ("an arrest based on probable cause serves interests that have long been seen as sufficient to justify the seizure"). "Probable cause exists when the totality of the circumstances demonstrates that a prudent person would believe that the arrestee has committed or was committing a crime." *Kuehl v. Burtis*, 173 F. 3d 646, 650 (8th Cir. 1999). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). The inquiry is an objective one considering only the facts known to the officer and not his subjective state of mind. *Id.* at 153. "The standard is a 'practical, nontechnical conception' that calls for 'facts and circumstances sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offence.'" *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111-112 (1975)). "Probable cause . . . is not a high bar; It requires only the kind of fair probability on which reasonable and prudent

people, not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (cleaned up).

In this case, Deputy Brown knew Liveley was wanted on one or more outstanding felony warrants. Deputy Brown was also investigating Liveley for three felony theft of property charges in Missouri. Liveley makes no argument that he advised Deputy Brown that he was in Arkansas at the time of the arrest. There is no evidence that Deputy Brown was aware he had crossed the state line. Even if Deputy Brown knew that he was in Arkansas when he made the arrest, the arrest would be lawful under Arkansas statutory law as a citizen's arrest. Deputy Brown had probable cause to believe Liveley had committed one or more felonies. The arrest was constitutional under the Fourth Amendment.

Alternatively, Brown argues he is entitled to qualified immunity. The qualified immunity inquiry consists of two questions: "(1) whether the facts alleged or shown, construed in the light most favorable to the Plaintiff, establish a violation of a constitutional right; and (2) whether that constitutional right was clearly established as of the time of the relevant conduct such that a reasonable official would have known that his actions were unlawful." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (citation omitted). The Court can answer the questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). A § 1983 plaintiff may defeat qualified immunity only if the answer to both questions is yes. *Boude v. City of Ramore*, 855 F.3d 930, 933 (8th Cir. 2017) (citation omitted). Having found no constitutional violation exists, Deputy Brown is entitled to qualified immunity. *See e.g., Kulkay v. Roy*, 847 F.3d 637, 646 (8th Cir. 2017) (finding individual defendants entitled to qualified immunity when plaintiff failed to state a constitutional violation).

Liveley has also sued Sheriff Reed. Even assuming a constitutional violation existed,

7

which it does not, nothing in the summary judgment record suggests Sheriff Reed was involved in Liveley's arrest, knew of Deputy Brown's investigation, or knew Deputy Brown was attempting to locate Liveley on November 17, 2020. A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Dep't. of Soc. Srvs.*, 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). Supervisors can "incur liability ... for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference or tacit authorization of the violative practices." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). No viable claim is stated against Sheriff Reed.

## IV. CONCLUSION

For these reasons, it is recommended that the Defendants' Motion for Summary Judgment (ECF No. 41) be **GRANTED,** and that this case be **DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of December 2021.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE